COMMONWEALTH *vs.* JOHN CHARLES McCANN.

Worcester. February 6, 1950. — March 10, 1950.

Present: QUA, C.J., LUMMUS, RONAN, SPALDING, & WILLIAMS, JJ.

*Homicide. Insane Person. Practice, Criminal,* Qualification of jurors. *Jury and Jurors. Evidence,* Relevancy and materiality; Opinion: expert.

No error was shown in a refusal by the judge presiding at the trial of an indictment for murder of a request by the defendant to see a report made by a police officer who, at the request of the district attorney, had conducted an investigation of those who had been summoned as jurors, or in a refusal by the judge to allow the defendant to examine the officer, where it did not appear that the officer approached or talked with any prospective juror and there was no evidence that the rights of the defendant were in any way prejudiced by the officer's investigation.

It was proper to exclude at a murder trial a question asked in cross-examination of the superintendent of a State hospital as to whether or not the hospital staff had had difficulty in making a decision as to the sanity or insanity of the defendant, who had been confined at the hospital pursuant to an order under G. L. (Ter. Ed.) c. 123, § 100, where it appeared that the superintendent had filed a report in accordance with § 100A, as amended by St. 1941, c. 194, § 11, stating that the defendant was not suffering from any mental disease which would affect his criminal responsibility and had testified to the same effect, and that the excluded question was asked solely to contradict the superintendent's opinion.

At the trial of a man twenty-three years of age indicted for first degree murder of a nine year old girl, the judge by adequate instructions submitted to the jury the issue whether an impulse to commit the crime overwhelmed him by reason of his mental condition, leaving him no choice, so that the killing was not the result of voluntary action on his part.

Requests at a murder trial, where insanity of the defendant was an issue, that, in order to be found capable of distinguishing between right and wrong, the defendant must be found to have had "more than a superficial awareness of the wrongness of his deeds," or "a normal amount of judgmental sense," did not state correct principles of law and properly were refused.

INDICTMENT for murder, found and returned on June 9, 1949.

The case was tried before *Hudson,* J.

*J. S. Derham,* (*W. T. Buckley* with him,) for the defendant.

*A. B. Cenedella,* District Attorney, (*A. A. Gelinas,* Assistant District Attorney, with him,) for the Commonwealth.

RONAN, J. The defendant, who was twenty-three years of age, was convicted of murder in the first degree of a nine year old girl. Her body was found in a wooden chest in an attic room in the house where the defendant lived, shortly after he had attempted to rape her and then had choked her to death. The only defence offered by the defendant at the trial was that he was insane at the time he committed the alleged offence.

The first assignment of error is to the denial of the defendant's request to see the report made by a police officer who, at the request of the district attorney, had conducted an investigation of those who had been summoned as jurors and to the refusal of the judge to allow counsel to examine the officer. The defendant's counsel had no evidence indicating that the rights of the defendant were in any way prejudiced by the investigation, and he apparently accepted as true the statement of the district attorney that the police officer did not approach or talk with any prospective jurors. A list of those who had been summoned as jurors was available to counsel. G. L. (Ter. Ed.) c. 277, § 66. Each juror before his selection had been examined under oath by the judge and had answered that he was not conscious of any bias or prejudice. *Commonwealth v. Lee,* 324 Mass. 714. It has frequently been held that there was no error of law in the denial of requests similar

to those made in the instant case. We need not repeat what was said in those decisions. *Commonwealth* v. *Cero*, 264 Mass. 264, 272–276. *Commonwealth* v. *Millen*, 289 Mass. 441, 475–476. *Commonwealth* v. *DiStasio*, 294 Mass. 273. *Commonwealth* v. *Sherman*, 294 Mass. 379, 384–386.

The second assignment of error assails the exclusion of evidence on the cross-examination of Dr. Flower, the superintendent of the Worcester State Hospital, where the defendant had been confined from June 16, 1949, to July 19, 1949, in accordance with an order of the Superior Court made under G. L. (Ter. Ed.) c. 123, § 100. Dr. Flower and Dr. Inman filed a report in accordance with G. L. (Ter. Ed.) c. 123, § 100A, as amended by St. 1941, c. 194, § 11, that the defendant was not suffering from any mental disease which would affect his criminal responsibility. Both these physicians testified to this effect at the trial. The defendant while at this hospital had been observed by approximately twenty physicians comprising the staff, and a staff meeting was held at which the defendant's case was fully discussed before a final report was made. Dr. Flower was asked on cross-examination if he had discussed with Mrs. McCann as to whether or not the hospital staff had difficulty in making a decision on the sanity or insanity of the defendant. The question was excluded subject to the defendant's exception. The defendant made an offer of proof that the witness told Mrs. McCann that the staff had considerable difficulty in determining whether the defendant was sane or insane, and that the witness was of the opinion that the defendant was not at that time one hundred per cent insane but would definitely become insane in a short time. While no offer of proof was necessary, *Stevens* v. *William S. Howe Co.* 275 Mass. 398, 402; *Commonwealth* v. *Rudnick*, 318 Mass. 45, 56, it is to be noted that the last part of the offer goes beyond the scope of the question and the ruling cannot be construed as excluding evidence that the witness had told Mrs. McCann that the defendant was not one hundred per cent insane but soon would be. That question was not then before the judge.

*Hallwood Cash Register Co.* v. *Prouty,* 196 Mass. 313, 315. *Commonwealth* v. *Doyle,* 323 Mass. 633, 637. *Hale* v. *Dodge,* 324 Mass. 51. Passing such matters, it is necessary to observe the posture of this cross-examination at the time the ruling was made. The ruling had been preceded by a long series of questions which were directed to affecting the credibility of the witness. The judge had properly ruled that counsel could show anything contrary to what the witness had testified, and stated that if "Mrs. McCann is prepared to testify that the doctor told her something which was contrary to his testimony, I will let you go into it." During the series of questions just mentioned, the witness was asked whether he told Mrs. McCann that the defendant was not one hundred per cent insane but that he was abnormal in many ways, and that he knew the defendant would in time become definitely insane. He first replied that he did not recall making precisely that statement to her. He then subsequently answered that he could not answer that question by a yes or no answer. He finally replied that he did not make such a statement to her. Consequently it is plain that the witness had denied making the statement attributed to him in the last part of the offer of proof and that the matter contained in that part of the offer had already been testified to by the witness. The ruling, in so far as that part of the offer is concerned, amounted to no more than a refusal to permit a repetition of the same testimony by the same witness and does not constitute error. *Commonwealth* v. *Shea,* 323 Mass. 406, 416–417. *Commonwealth* v. *Lee,* 324 Mass. 714, 719. The way was open to introduce the evidence of Mrs. McCann that the witness had told her that the defendant was not one hundred per cent insane if it was thought such evidence would aid the defendant. No such evidence was offered.

We pass now to the only matter that the judge ruled upon by excluding the evidence concerning the alleged difficulty of the hospital staff in reaching a conclusion as to the de-

fendant's insanity. The witness had expressed his own in-
dividual opinion that the defendant was sane. The fact, if
it was a fact, that some one of the twenty members of the
hospital staff might have had a different opinion or that
the staff might have experienced difficulty in reaching its
final conclusion that the defendant was sane or that the
witness told Mrs. McCann about this difficulty, in no way
tended to contradict the opinion of the witness given at the
trial, and there was no error in excluding the evidence which
was offered solely for that purpose. See *Phillips* v. *Marble-
head,* 148 Mass. 326, 329–330; *Benton* v. *Brookline,* 151
Mass. 250, 266.

Three experts testified in behalf of the Commonwealth
and one for the defendant. All agreed that the defendant
was a psychopathic personality; and while they differed
somewhat as to the meaning of this term, they all concurred
in expressing their opinions that this was not a form of in-
sanity. The expert for the defendant testified that the de-
fendant at the time of the crime was of a psychopathic
personality with marked schizoid traits and probably early
dementia praecox which is one type of insanity, and that,
while the defendant might still know the difference between
right and wrong, he, because of his mental disease, was un-
able to control his impulses. On the other hand, the experts
for the prosecution testified that the defendant was sane and
that there was no lack of control of his impulses. The only
direct evidence as to what induced the defendant to get the
little girl to visit his home was that he had "got an urge to
have sexual intercourse" with her. That by itself denoted
no more than a lewd and lascivious desire born of passion
and lust, and a jury would be warranted in convicting him
of the murder which followed in realizing his desire unless
upon all the evidence they came to the conclusion that he
was not responsible for his act by reason of his mental con-
dition. While the defendant contends that he did not
know the difference between right and wrong, his principal
contention is that the impulse to commit the crime over-
whelmed him by reason of his mental condition, leaving him

no choice, and that consequently the killing was not the result of any voluntary action on his part. The issue was properly submitted to the jury with adequate instructions.

One whose mental condition is such that he cannot distinguish between right and wrong is not responsible for his conduct, and neither is one who has the capacity to discriminate between right and wrong but whose mind is in such a diseased condition that his reason, conscience and judgment are overwhelmed by the disease and render him incapable of resisting and controlling an impulse which leads to the commission of a homicide. In such an instance, the homicide would be "not the act of a voluntary agent, but the involuntary act of the body, without the concurrence of a mind directing it." *Commonwealth* v. *Rogers,* 7 Met. 500, 502. *Commonwealth* v. *Johnson,* 188 Mass. 382, 388. *Commonwealth* v. *Cooper,* 219 Mass. 1, 4–5. *Commonwealth* v. *Stewart,* 255 Mass. 9, 13. *Commonwealth* v. *Trippi,* 268 Mass. 227, 230. *Commonwealth* v. *Sheppard,* 313 Mass. 590, 594. See *Commonwealth* v. *Clark,* 292 Mass. 409, 414–415.

The third and fourth assignments of error are based upon the refusal of requests for rulings that, in order to be found capable of distinguishing between right and wrong, the defendant must be found to have had, as stated in one request, "more than a superficial awareness of the wrongness of his deeds" and, in the other request, "a normal amount of judgmental sense." There was no error because these requests did not state the correct principles of law. *Commonwealth* v. *Stewart,* 255 Mass. 9, 13. *Commonwealth* v. *Trippi,* 268 Mass. 227, 230. The fifth and sixth assignments of error are directed to the failure of the judge to grant two requests for rulings which in substance stated that the defendant could not be found guilty if by reason of a mental disease he was unable to resist the impulse to commit the homicide. The matters included in these two requests were fully and correctly covered by the instructions given to the jury, and the defendant cannot complain if they were not given in the language embodied in the requests. *Common-*

*wealth* v. *Goldsmith*, 249 Mass. 159, 163. The seventh assignment of error is based upon a denial of a request for a ruling that "The doctrine of irresistible impulse may be considered in mitigation of the degree of the offence charged." The jury were instructed that the defendant could not be found guilty if he acted by reason of an irresistible impulse caused by a diseased condition of the mind. They must be presumed to have followed the instructions, *Commonwealth* v. *Capalbo*, 308 Mass. 376, 383; *Commonwealth* v. *Bellino*, 320 Mass. 635, 645, and in arriving at their verdict they must have found, as they reasonably could, that there was an absence of such an impulse. We do not intimate that the requested ruling sets forth any correct principle of law; we simply hold that the defendant, if assumed to be entitled to the ruling, was not harmed by its refusal.

The entire record has been examined in accordance with G. L. (Ter. Ed.) c. 278, § 33E, as amended by St. 1939, c. 341, in order to determine whether the verdict was against the law or contrary to the weight of the evidence or whether justice requires a new trial, but we can find no reason for disturbing the verdict.

*Judgment affirmed.*