## COMMONWEALTH vs. ALBERT BANNISTER, JR.

Hampden. October 19, 1982. — January 4, 1983.

Present: PERRETTA, CUTTER, & KASS, JJ.

*Practice, Criminal,* Assistance of counsel, New trial, Argument by prosecutor, Instructions to jury. *Evidence,* Of sanity. *Insanity.*

The defendant at a criminal trial was not denied effective assistance of counsel by his attorney's failure to seek an examination of the defendant by an independent psychiatrist after two psychiatrists who had examined the defendant reported that the defendant was mentally ill, one expressing no opinion respecting the defendant's criminal responsibility, the second concluding that the defendant was criminally responsible for his actions. [73-76]

At a criminal trial, failure by defense counsel to object to testimony concerning numerous other instances of the defendant's misconduct and to file motions to suppress certain evidence did not deprive the defendant of effective assistance of counsel, where these omissions were the result of a decision to raise the defense of lack of criminal responsibility through lay witnesses, including the defendant. [76-77]

At a criminal trial during which the judge correctly instructed the jury that the burden of proof as to all elements of the crimes, including criminal responsibility, was upon the Commonwealth, the defendant was not prejudiced by defense counsel's opening to the jury in which he stated that it was the defendant's burden to prove his lack of criminal responsibility and to prove it beyond a reasonable doubt. [77]

Certain evidentiary rulings by the judge at a criminal trial did not amount to a rejection of the defendant's right to present an insanity defense through lay witnesses [77-79]; and even if such rulings were erroneous, the defendant showed no resulting harm, having failed to make an offer of proof at trial or, on motion for a new trial, to offer any affidavits or testimony to show that the testimony in question would have been given but for the judge's rulings [79].

There was no substantial risk of a miscarriage of justice at a criminal trial as a result of an improper comment by the prosecutor respecting the defendant's failure to produce an expert witness on the issue of criminal responsibility. [79-80]

There was no error at the trial of a criminal case in the judge's instructions to the jury on reasonable doubt and criminal responsibility and

in the judge's failure to give instructions on his own motion as to the consequence of a verdict of not guilty by reason of insanity. [80-82]

INDICTMENTS found and returned in the Superior Court on July 12, 1977.

The cases were tried before *Donelan, J.*, a District Court judge sitting under statutory authority, and a motion for a new trial was heard by *John J. Murphy, Jr., J.*

*William C. Newman* for the defendant.

*William T. Walsh, Jr.*, Assistant District Attorney, for the Commonwealth.

PERRETTA, J. A minor motor vehicle violation by the defendant led to indictments charging him with possession of burglarious implements, G. L. c. 266, § 49, possession of a sawed-off shotgun, G. L. c. 269, § 10(c), and carrying a shotgun in a motor vehicle, G. L. c. 269, § 10(a).[1] He appeals from his convictions on those indictments and from an order denying his motion for a new trial, arguing: (1) that his trial counsel gave him ineffective assistance in putting forth the defense of a lack of criminal responsibility; (2) that the trial judge erroneously excluded lay testimony on the question of the defendant's criminal responsibility; (3) that during his summation to the jury, the prosecutor improperly commented on the defendant's failure to produce expert witnesses concerning his lack of criminal responsibility; and (4) that the trial judge's jury instructions on the defense of insanity and on the Commonwealth's burden of proof were erroneous. We affirm.

1. *The Facts.*

The facts which gave rise to the indictments and which are pertinent to the issues on appeal are as follows. About 3:00 A.M., on April 30, 1977, the defendant and his brother, Bruce Bannister, were driving along Route 20, in Brimfield, when they were stopped by State Trooper Robert Corry for driving with a broken headlight. The defendant, who was

---

[1] The defendant was also convicted on numerous other indictments arising out of this same incident. Those convictions were placed on file with the consent of the defendant and are not before us.

driving, identified himself as William Budlong and pro-
duced various items of identification, but no driver's
license, bearing that name. Because of a discrepancy on the
face of one item of identification, Corry became suspicious
and asked the passenger to stand outside and to the back of
the car. The passenger told Corry that his name was Bruce
Budlong. When Corry asked the defendant the name of his
passenger, the defendant identified him as Bruce Bannister.

Corry then called into his barracks to get information on
these names. He received no response as to William Bud-
long but he was told that Bruce Bannister had a history of
violent crimes and had been treated for drug addiction.
Corry requested assistance and Trooper Stephen Bennett ar-
rived at the scene.

Bennett found in the car a cocked, sawed-off shotgun and
five shells, one of which was in the chamber of the gun. The
defendant was given Miranda warnings but stated that he
waived them and accused the troopers of placing the shot-
gun in the car. He insisted that his name was Budlong, but
at the police barracks he was identified by a local police of-
ficer who knew him. Confronted with the inevitable, the
defendant muttered words to the effect that "[y]ou got me."
The car was impounded. A set of lock-picks was found.

The defendant was examined pursuant to G. L. c. 123,
§ 15, for purposes of determining his competency to stand trial
and his criminal responsibility. Dr. Harry M. Michelson
reported that the defendant suffered from a mental illness and
was not competent to stand trial. Dr. Michelson offered no
opinion concerning the defendant's criminal responsibility,
and he recommended that the defendant undergo further
observation and testing. Approximately three months later,
Dr. John Purtzer, Assistant Medical Director at Bridgewater
State Hospital, concluded that the defendant suffered from
chronic paranoid schizophrenia but that he was criminally
responsible for his actions and competent to stand trial.

2. *Ineffective Assistance of Counsel.*

After his convictions in 1978, and while his appeal lay
dormant (apparently due to preparation of the transcripts

of evidence at trial), the defendant filed a motion for a new trial, which was heard and decided under Mass.R.Crim.P. 30(b), 378 Mass. 900 (1979), alleging ineffective assistance of counsel. We consider the defendant's claims and the motion judge's[2] findings of fact concerning them, first to determine whether "the conduct of his lawyer was 'measurably below that which might be expected from an ordinary fallible lawyer,'" *Commonwealth* v. *Rondeau*, 378 Mass. 408, 412 (1979), quoting from *Commonwealth* v. *Saferian*, 366 Mass. 89, 96 (1974), and, if so, whether the defendant has demonstrated "prejudice resulting therefrom," *Commonwealth* v. *Rondeau*, 378 Mass. at 412. It is not our function to "second-guess" defense counsel, and we look to see only whether his professional judgment was "manifestly unreasonable," i.e., whether it resulted in the defendant's loss of "an otherwise available, substantial ground of defense." *Id.* at 413. In conducting our review, we "accord[ ] considerable deference" to the motion judge's findings. *Commonwealth* v. *Harris*, 11 Mass. App. Ct. 165, 177 (1981).

The defendant claims that in light of Dr. Michelson's and Dr. Purtzer's reports, defense counsel should have filed a motion requesting that the defendant be examined by an independent psychiatrist. He asserts that the necessity for an additional examination should have been "obvious" from the fact that, while both doctors had concluded that the defendant was mentally ill, Dr. Purtzer's conclusion that the defendant was criminally responsible was tainted by the erroneous belief that psychotic behavior was required for a finding of a lack of criminal responsibility.

At the hearing on his motion, the defendant testified that his trial attorney had informed him that the Commonwealth would not pay "for private psychiatrists" and since he was indigent, an additional examination was not possible. The defendant further testified that his trial attorney also advised him that "any report from an outside psychiatrist would only balance out the report because there were one or two contradictory reports."

---

[2] The motion was not heard by the trial judge.

"To the extent that the defendant's motion was based on facts which were neither agreed upon nor apparent on the face of the record, he had the burden of proving such facts." *Commonwealth* v. *Bernier,* 359 Mass. 13, 15 (1971). See also *Commonwealth* v. *Brown,* 378 Mass. 165, 171 (1979). The defendant did not call his prior attorney to testify at the hearing, and when the prosecutor indicated that he would do so, the defendant invoked the attorney — client privilege. Neither the motion judge nor the prosecutor forced the issue. See S.J.C. Rule 3:07, DR4-101 (C) (4), as appearing in 382 Mass. 778 (1981), allowing a lawyer to disclose "[c]onfidences or secrets necessary . . . to defend himself . . . against an accusation of wrongful conduct," and Proposed Mass.R.Evid. 502[d][3], providing that "[t]here is no privilege under this rule . . . [a]s to a communication relevant to an issue of breach of duty by the lawyer to his client or by the client to his lawyer." The motion judge was not required to believe and obviously did not accept the defendant's version of his communications with his prior attorney.

There is no support in the record for the defendant's claim that Dr. Purtzer's conclusion, concerning the defendant's criminal responsibility, was untenable because of a reliance upon the absence of psychotic behavior by the defendant. Dr. Purtzer's conclusion was based upon his stated reasons: (1) the defendant's behavior was "goal oriented and rational, given his explanation that he did not want to be caught in a parole violation and thought it proper to give a false name in order to avoid detection"; (2) the defendant's "own account of the events leading to his arrest formed a picture of very rational goal oriented behavior"; (3) Corry's report "does not give any indication of any sort of bizarre or erratic behavior"; and (4) the facts that the shotgun was under the front seat next to the driver's side and that a false driver's license was found in the car, suggest "that Mr. Bannister's thoughts and actions were directed toward criminal activity in a rather organized fashion."

The record amply supports the motion judge's finding that, in consideration "of the case the defense counsel had to

work with and the fact that two doctors had failed to declare the defendant not criminally responsible, defense counsel's decision not to seek an independent examination cannot be said to constitute ineffective assistance of counsel."[3]

The defendant also alleges that his previous attorney was ineffective because he failed to object to certain testimony (concerning numerous other incidents of the defendant's misconduct as well as allegations of crimes never proved) and to file motions to suppress evidence (the physical evidence found in the car and the defendant's statements at the time of his arrest). He contends that these failures cannot be attributed to tactical decisions. The motion judge, however, found that "in light of the overwhelming evidence against him, the defendant and his counsel made a determination prior to trial that the defendant would testify, that he would disclose his past history of arrest, incarceration, treatment at Bridgewater State Hospital, and past erratic behavior."

We see no error in the motion judge's finding that defense counsel's decision, to make full disclosure of the defendant's past, provided an explanation for those actions now characterized by the defendant as "failures." The finding is supported by the defendant's testimony at trial (the trial transcripts were before the motion judge as exhibits), see part 3 of this opinion, *infra,* as well as at the hearing on the motion. Defense counsel's actions were consistent with the decision

---

[3] Our conclusion is equally applicable to the defendant's claim that his attorney's failure to call either Dr. Purtzer or Dr. Michelson to testify, especially the latter, constituted ineffective assistance, particularly in view of the decision not to seek an independent examination. On this point, the motion judge found that the failure to call either doctor, when Dr. Michelson had offered no opinion as to the defendant's criminal responsibility and Dr. Purtzer's opinion was adverse to the defendant, was a "logical" decision rather than incompetent advice.

Moreover, defense counsel did not forgo raising the defense of a lack of criminal responsibility but instead, as discussed in part 3 of this opinion, *infra,* presented it through lay testimony. See *Blaisdell* v. *Commonwealth,* 372 Mass. 753, 765-766 (1977); *Osborne* v. *Commonwealth,* 378 Mass. 104, 112 (1979).

to raise the defense of a lack of criminal responsibility through lay witnesses, including the defendant. Whether that decision was wise is not the question, and even if it were, it is not easily answered. All that can be said with certainty is that the strategy was unsuccessful, but that is not to say that the conduct of the attorney was "measurably below that" set forth in *Commonwealth* v. *Saferian,* 366 Mass. at 96.

One further claim does require us to consider whether the defendant was harmed. At the close of the Commonwealth's evidence defense counsel made an opening statement to the jury in which he stated that it was the defendant's burden to prove his lack of criminal responsibility and to prove it beyond a reasonable doubt. The error remained uncorrected until the trial judge gave his final instructions to the jury,[4] at which time he squarely placed the burden of proof as to all elements of the crimes, including criminal responsibility, upon the Commonwealth. Further, the misstatement of the law reflects that defense counsel had assumed a burden that was not his, rather than an instance of a failure to take required action. In view of the trial judge's instructions and the fact that defense counsel's misconception would have led him to greater and not lesser effort, we are satisfied that the misstatement of the law did not result in prejudice to the defendant. *Commonwealth* v. *Rondeau,* 378 Mass. at 413.

3. *Evidentiary Rulings by the Trial Judge.*

The defendant next argues that the trial judge erroneously excluded testimony from lay witnesses, including the defendant, on the issue of his psychiatric condition.

The defendant began his testimony by explaining that he had possession of the sawed-off shotgun to protect himself from "police departments and things that affected the course of my life that I thought other people were mishandling."

---

[4] The time span was short. The defendant's case consists of approximately thirty-two pages of transcript. The jury heard defense counsel's opening argument and the trial judge's instructions on the same morning.

Upon the prosecutor's objection, the trial judge advised defense counsel, at side-bar, that the defendant's testimony that he lacked criminal responsibility due to his belief that he had been imprisoned falsely was "not the way to show a lack of responsibility."

The defendant was allowed, however, to give a rambling account of a series of arrests and imprisonments, all claimed to be unjustified, and a history of alleged police surveillance. He also testified that he had purchased the shotgun at the request of a woman with whom he was living, that she had tried to shoot him and instead destroyed one of the walls in their apartment, and that he was taking the gun to sell it when he was arrested by the troopers, who he believed had been waiting specifically for him. Although he believed that there was "a good possibility" that he was mentally ill, he nonetheless was convinced that the police were "framing" him. The defendant stated that he was somewhat clairvoyant but his powers were "hindered" by the harassment that he was experiencing.

Defense counsel next called Anthony Pappas, who stated that he had known the defendant for about four or five years and that he had heard him testify that morning. Defense counsel then put the following two questions to the witness: (1) "[I]s any of what he testified to here this morning similar or the same as things you heard from him before?"; and, (2) "[D]irecting your attention to a particular occasion, did you have a discussion with him concerning the letter [not in evidence] he wrote?" The prosecutor's objections to the questions were sustained for numerous reasons, including that the questions called for "testimony from a friend as to mental competency."[5] We regard the judge's refusal to allow these questions as rulings primarily based on the form and obscurity of the questions.

---

[5] Brenda Pellegrino, the defendant's sister, testified that the defendant had told her about his argument with his girlfriend, and she corroborated the defendant's testimony to the narrow extent that she had seen the damaged apartment wall. The record of her testimony reveals no exclusion of any of the testimony sought to be elicited from her by defense counsel.

The defendant claims that the sustaining of the prosecutor's objections was a rejection by the trial judge of the defendant's right to present an insanity defense through lay witnesses. See *Blaisdell* v. *Commonwealth*, 372 Mass. 753, 764-765 (1977) ("A defendant seeking to assert the defense of insanity may do so in a number of ways . . . . A defendant may have a prior history of mental disorders and treatment and may offer evidence of the same through medical records with or without expert witnesses; . . . he might argue that the very facts of the alleged crime create an inference of mental disease or defect; lay witnesses may testify as to their observations of the defendant prior to, during or subsequent to the time of the alleged crime . . . ." See also *Commonwealth* v. *Laliberty*, 373 Mass. 238, 245 (1977), and cases therein discussed. We see nothing in the trial judge's rulings indicative of a refusal to allow the defendant to raise his defense without expert testimony. Rather, the judge correctly ruled that lay witnesses could not offer their opinions as to the defendant's lack of criminal responsibility.

Even if these rulings could be viewed as erroneous, the defendant has shown no harm. He argues in his brief that the rulings prevented him from eliciting testimony "to corroborate that Mr. Bannister had been talking to television sets, receiving messages directed to him from advertisers on the radio, prognosticating the future accurately, living in a movie, and had been involved in paranoid episodes with the FBI and the CIA for many years." Trial counsel made no offer of proof as to these facts, and nothing on the record shows that the testimony would have been given but for the trial judge's rulings.[6]

4. *Prosecutor's Closing Argument.*

During his closing argument to the jury, the prosecutor stated: "If they had a psychiatrist they would have had

[6] The defendant's present counsel makes no claim against prior counsel concerning any failure to elicit this testimony. In this respect, we note that at the hearing on the motion for a new trial, the defendant offered neither affidavits nor testimony as to what the witness would have been prepared to relate at trial.

him here, you can be sure, or they would have a battery of psychiatrists and given you expert testimony as to his mental condition as to criminal responsibility, but there were none before you. And this is to be weighed, I ask you, very seriously." This remark should not have been made. Cf. *Fleming* v. *United States*, 332 F.2d 23, 25-26 (1st Cir. 1964), where the prosecutor's comment upon the defendant's failure to produce a fingerprint expert prompted an immediate instruction to the jury that the burden of proof was on the government and not the defendant. Compare *Commonwealth* v. *Niziolek*, 380 Mass. 513, 522 (1980), quoting from *Gilbert* v. *State*, 36 Md. App. 196, 208 (1977), explaining the difference between an improper shifting of the burden of proof and the drawing of a permissible inference adverse to the defendant.

Defense counsel did not object to the statement, and based upon our scrutiny of the trial judge's jury instructions (see part 5 of this opinion, *infra*), which contained adequate discussion of the Commonwealth's burden of proof in respect of both the defendant's commission of the acts constituting the crimes charged and his criminal responsibility therefor, we are satisfied that there is no substantial risk that a miscarriage of justice has occurred.[7]

5. *The Jury Instructions.*

The defendant views the trial judge's instruction on reasonable doubt as inadequate because it did not include all of the "time-tested language of *Commonwealth* v. *Webster*, 5 Cush. 295, 320 [1850]." *Commonwealth* v. *Therrien*, 371 Mass. 203, 209 (1976). While adherence to that language has been urged repeatedly, see e. g. *Commonwealth* v. *Ferreira*, 373 Mass. 116, 130 n.12 (1977), insubstantial deviations do not amount to automatic error. The trial judge instructed the jury: (1) that the Commonwealth has the burden of proving the defendant's guilt "beyond a reasonable

---

[7] The defendant's present counsel does not ask that we consider prior counsel's failure to object as reflecting upon his competency, cf. *Commonwealth* v. *Anslono*, 9 Mass. App. Ct. 867, 868 (1980), and even were we to do so, we would conclude that there was no prejudice to the defendant.

doubt and to a moral certainty"; (2) that a guilty verdict "cannot be based upon mere probability or speculation or suspicion"; (3) that "circumstances of suspicion, no matter how great or strong, are not evidence of guilt"; and (4) that the defendant "must be acquitted unless the facts of his guilt are proved to your satisfaction beyond a reasonable doubt to the exclusion of every reasonable theory consistent with innocence." His remark about "a *subtle* and clear conviction of guilt" (emphasis supplied) cannot be exaggerated and construed, as the defendant urges, as an instruction that "a subtle feeling of guilt is enough to convict."[8] The statement is, at best, a "lapse . . . [which] should not be held fatal . . . when the charge is read as a whole." *Commonwealth v. Robinson,* 382 Mass. 189, 198 (1981), and cases therein cited.

Quoting the trial judge's instruction on criminal responsibility, the defendant notes that he used the term "mental capacity" eleven times without using the "clearer and more understandable" language employed in *Commonwealth v. McHoul,* 352 Mass. 544, 546-555 (1967). We do not approve of appellate counsel's distortion, through the use of ellipses, of the trial judge's statement to the jury which was in words almost identical to those set out in the *McHoul* case. There was no error.

Nor did the trial judge commit error in not giving an instruction as to the consequence of a verdict of not guilty by reason of insanity, as no request for such an instruction was made. See *Commonwealth v. Mutina,* 366 Mass. 810, 823 n.12 (1975) ("[T]he defendant, on his timely request, is entitled to an instruction regarding the consequences of a verdict of not guilty by reason of insanity").

By leading into his instructions on criminal responsibility with the statement that "[t]he defense in this case, as I un-

---

[8] We think that the trial judge used the word "settled" rather than "subtle" and that the error is in the transcript. However, as no motion was presented under Mass.R.A.P. 8(e), 365 Mass. 851 (1974), we will take the transcript as we find it.

derstand it, is that he was not criminally responsible," the trial judge is claimed to have "belittled" and "demeaned" the defendant's defense as well as having engaged in "a clear due process violation." Additionally, the trial judge is alleged to have demonstrated bias by charging that the Commonwealth's lay testimony was sufficient to convict but failing "to charge the obverse."[9] Both contentions lack merit. Contrast *Commonwealth* v. *Anslono,* 9 Mass. App. Ct. 868 (1980).

*Judgments affirmed.*

*Order denying motion for new trial affirmed.*

---

[9] In commenting upon the fact that neither the Commonwealth nor the defendant called upon experts and stressing that neither was required to do so, the trial judge also stated: "The inquiry is not the quantity of evidence on this particular issue, as to any issue, but it is on the quality or believability of the evidence. Even if the defendant or the Commonwealth had produced psychiatrists on the one side or the other to testify . . . you would not be bound to accept the testimony of any of those experts. Experts are offered to assist the jury in reaching a verdict, and their testimony, you are not compelled to follow."