COMMONWEALTH *vs.* NORMA ROMAN.

Middlesex. October 5, 1992. - January 28, 1993.

Present: LIACOS, C.J., ABRAMS, NOLAN, LYNCH, & GREANEY, JJ.

*Insanity. Evidence*, Expert opinion, Insanity. *Witness*, Expert.

At a criminal trial, the judge correctly excluded from evidence, as hearsay, a letter proffered by the defendant containing a physician's diagnosis of the defendant's mental illness. [237-239]

In a criminal case in which the defendant raised the defense of lack of criminal responsibility by reason of her multiple personality disorder, there was no error in the judge's instructions to the jury with respect to the issue of criminal responsibility. [239-240]

INDICTMENTS found and returned in the Superior Court Department on April 17, 1990, and September 27, 1990, respectively.

The cases were tried before *Margot Botsford*, J.

The Supreme Judicial Court on its own initiative transferred the case from the Appeals Court.

*Steven J. Rappaport* for the defendant.

*Barbara F. Berenson*, Assistant District Attorney, for the Commonwealth.

ABRAMS, J. Norma Roman (defendant) appeals from two convictions of possession of heroin with intent to distribute, second offense.[1] The defendant claims that she lacked criminal responsibility because she suffers from multiple personality disorder (MPD). On appeal the defendant challenges the judge's exclusion of a psychiatrist's letter, thereby limiting an expert's testimony, and the judge's instruction to the jury

---

[1] A conviction of possession of cocaine was placed on file after the jury returned a verdict of guilty. See *Commonwealth* v. *Delgado*, 367 Mass. 432, 438 (1975). See also *Commonwealth* v. *Paniaqua*, 413 Mass. 796, 797 n.1 (1992).

on criminal responsibility. We transferred the defendant's appeal to this court on our own motion. We affirm.

We summarize the facts. On January 10, 1990, pursuant to a search warrant,[2] the Lowell police searched the defendant's apartment and found large quantities of heroin, money, bank books, a notebook, and a small bag of cocaine. Roman was arrested and searched. The police found a large quantity of heroin on her person. On August 17, 1990, a Lowell police officer[3] observed the defendant and others in what appeared to be drug transactions. The defendant was arrested. The defendant was searched and heroin was found on her person. The grand jury returned two indictments for possession of heroin with intent to distribute (second offense)[4] and one indictment charging possession of cocaine.

At trial, James C. Beck, a psychiatrist and director of the Cambridge Court Clinic, testified on the defendant's behalf. He said that he reviewed past medical records, records of the defendant's outpatient psychotherapy, police reports relating to her arrest, grand jury minutes and a letter by Dr. James A. Chu, a psychiatrist who evaluated the defendant in 1987 for an attorney.[5] Dr. Beck also interviewed her twice for a total of two hours. He testified that the defendant's demeanor changed dramatically between the two interviews.

Dr. Beck testified that he was of the opinion that the defendant suffered from MPD when he met with her in July, 1990, that she had suffered from it in January, 1990, when she was first arrested and that she continued to suffer from it in August, 1990, when she was arrested for the second time. Dr. Beck testified that the condition was chronic. He also noted that he never met the core personality, "Norma," that he did not know whether "Norma" could control the actions of the other personalities, whether the transitions from "Norma" to one of the other personalities were voluntary, or

---

[2]Roman does not challenge the warrant on appeal.

[3]The officer also was at the defendant's apartment when it was searched.

[4]She was convicted in 1987 of possession with intent to distribute heroin.

[5]A different attorney from trial counsel in this case.

whether "Norma" had any memories of acts the other personalities performed.

On cross-examination, Dr. Beck testified that "just because you say this person has [MPD], doesn't go to the issue of whether they were responsible at the time of the alleged act or they weren't." He also admitted that he found no evidence that the defendant, at the time of the commission of the crimes, could not conform her behavior to law or that she did not appreciate the wrongfulness of her conduct.

The defendant testified. As "Norma" she denied using or selling drugs. She told the jurors that, on two occasions in the past, she ("Norma") had disposed of drugs found in her apartment. "Norma" said that she "lost time" on the two dates on which the Commonwealth said she possessed the heroin with intent to distribute. "Norma" denied meeting with Dr. Beck. The defendant also testified as "Alice Mejias."[6] "Alice" said she had no control over "Vicky." "Vicky" testified and admitted selling drugs on August 17 and possessing drugs in January. "Vicky" denied she had any mental illness and said she chose to engage in drug-related activities. She said she knew the activities were illegal.[7]

A jury returned verdicts of guilty. The judge in a jury-waived trial found the defendant guilty of the portion of the indictments alleging a second offense.

1. *The exclusion of Dr. Chu's letter.* The defendant had pleaded guilty to possession of cocaine with intent to distribute in February, 1988. The defendant's attorney in that case referred her to Dr. James A. Chu. Dr. Chu sent the attorney a letter in which he concluded that the defendant met "the criteria for a diagnosis of multiple personality disorder."

The defendant offered the Chu letter in evidence in her 1991 trial. The defendant also wanted her expert to testify to the contents of the letter. The Commonwealth requested a

---

[6]She denied knowledge of some drugs and cash in the apartment.

[7]Other "personalities" were "Virginia," "Mary Lou," "Me," "India," and "Ayessa." Those personalities did not appear at trial.

voir dire. See *Department of Youth Servs.* v. *A Juvenile*, 398 Mass. 516, 532 (1986).

At the voir dire, the expert, Dr. Beck, testified that, in the thousands of times he had testified as to a defendant's mental health, he had derived the information mainly from the defendant. Dr. Beck explained that he was skeptical with regard to MPD and that he had never seen a case before the defendant's. He testified that MPD was a subspecialty of Dr. Chu's and that he (Dr. Beck) did pay some attention to the diagnosis of Dr. Chu. In response to a question from the judge, Dr. Beck concluded that he could reach his opinion, that the defendant suffered from MPD, without relying on Dr. Chu's letter. The judge then excluded the letter, but allowed Dr. Beck to testify as to his opinion without including Dr. Chu's letter. The defendant claims that the judge's ruling was erroneous. We do not agree.

The Chu letter was hearsay and inadmissible barring an exception to the hearsay rule. *Grant* v. *Lewis/Boyle, Inc.*, 408 Mass. 269, 274 (1990). "[A]n expert [may] base an opinion on facts or data not in evidence if the facts or data are independently admissible and are a permissible basis for an expert to consider in formulating an opinion." *Department of Youth Servs.* v. *A Juvenile, supra* at 531. Although in forming an opinion an expert can draw on the education and general experience that combine to create the witness's expertise, the expert may not give an opinion based on inadmissible evidence. See *Commonwealth* v. *LeFave*, 407 Mass. 927, 945 n.2 (1990) (Liacos, C.J., dissenting). The defendant suggests two grounds for the admissibility of the letter.[8]

The defendant points to art. 12 of the Massachusetts Declaration of Rights, which states that "every subject shall

---

[8]The defendant expressly disavows reliance on G. L. c. 233, § 79G (1990 ed.), as a basis for admitting the Chu letter. In any event, the defendant concedes that she did not satisfy § 79G's provisions for notice. As the Chu letter was not a medical record, it fails to satisfy the requirements of G. L. c. 233, § 79 (1990 ed.). See *Commonwealth* v. *Dunne*, 394 Mass. 10, 16-17 (1985).

have a right to produce all proofs, that may be favorable to him." The defendant's argument is meritless; art. 12 does not require the admission of hearsay.

The defendant also relies on cases in which we have said, "An insanity defense may be raised properly by the admission of any evidence which, if believed, might create a reasonable doubt concerning the defendant's criminal responsibility at the time of the [crime]." *Commonwealth* v. *Dias*, 402 Mass. 645, 649 (1988), quoting *Commonwealth* v. *Laliberty*, 373 Mass. 238, 243, 246-247 (1977) ("experts experienced in the study and treatment of the mentally ill may testify fully as to the nature and extent of impairment of defendants' mental faculties as well as their observations or other bases for their conclusions"). The defendant argues that "[c]learly, the other bases referred to in these cases implicate hearsay evidence." Contrary to the defendant's contention, our cases do not support her claim. The cases merely state the obvious: evidence of mental incapacity may come from a wide range of evidence including nonexpert evidence. Our cases do not suggest that inadmissible hearsay evidence becomes admissible because it relates to criminal responsibility. There was no error in the judge's ruling.[9]

2. *The judge's instruction on insanity.* The defendant concedes that the judge charged the jury in accordance with *Commonwealth* v. *McHoul*, 352 Mass. 544, 546-547 (1967). She argues, however, that the judge erred in instructing the jury that "you must focus on the particular mental state under or in which you find the defendant was operating at the time of the alleged criminal conduct." The defendant asserts that this instruction precluded the jury from returning a verdict of lack of criminal responsibility for an individual suffering from multiple personality disorder. The defendant asserts that, although "Vicky" did not suffer from a lack of

---

[9]Because we have rejected rule 703 of the Proposed Massachusetts Rules of Evidence, see *Department of Youth Servs.* v. *A Juvenile*, 398 Mass. 516, 527-528, 531 (1986), we do not discuss proposed rule 803 (4). That rule relies on rule 703's general premise that experts may base their testimony on inadmissible evidence.

criminal responsibility, "Norma" did. She argues that the instruction should have focused on the issue whether "Norma," the "core personality," lacked "substantial capacity to control 'Vicky' and thereby to conform her conduct to the requirements of law." The defendant argues that the judge should have instructed the jurors to consider whether "Norma" lacked substantial capacity to conform "Vicky's" behavior to the requirements of law.

States that have considered the issue of the criminal responsibility of a person suffering from MPD follow the general rule that jurors are to consider the mental state of the individual at the time of the commission of the crime. See, e.g., *State* v. *Grimsley*, 3 Ohio App. 3d 265, 268 (1982) ("There was only one person driving the car and only one person accused of drunken driving. It is immaterial whether she was in one state of consciousness or another, so long as in the personality then controlling her behavior, she was conscious and her actions were a product of her own volition"); *Kirkland* v. *State*, 166 Ga. App. 478, 480 (1983) ("The law adjudges criminal liability of the person according to the person's state of mind at the time of the act; we will not begin to parcel criminal accountability out among the various inhabitants of the mind"). The defendant cites no authority to the contrary. Our law requires jurors to determine criminal responsibility of the person at the time of the commission of the crime. The judge so instructed the jury. There was no error.[10]

*Judgments affirmed.*

---

[10]See Slovenka, Commentary, The Multiple Personality: A Challenge to Legal Concepts, 17 J. Psychiatry & L. 681, 686-703 (Winter 1989), for a discussion of some problems which arise if a person is not viewed as a single personality.