Commonwealth v. Goudreau.

## COMMONWEALTH vs. ROGER A. GOUDREAU.

Middlesex. March 4, 1996. - May 22, 1996.

Present: LIACOS, C.J., WILKINS, ABRAMS, LYNCH, & GREANEY, JJ.

*Jury and Jurors. Evidence,* Hearsay, Hospital record, Expert opinion. *Witness,* Expert. *Practice, Criminal,* Deliberation of jury, Fair trial, Instructions to jury, Reasonable doubt, Capital case. *Mental Impairment. Homicide.*

A criminal defendant demonstrated no prejudice that would warrant the grant of a new trial resulting from the prosecutor and defense counsel being permitted to sit with the deliberating jury for the replay of a videotape that the jury had requested. [733-734]

At a murder trial, the judge did not err in excluding a dictated but unsigned letter of a doctor at Bridgewater State Hospital summarizing the defendant's background and giving an opinion of the defendant's mental condition, where portions of the letter were not admissible under G. L. c. 233, § 79, or under any other exception to the hearsay rule. [734]

At a murder trial in which the defendant raised the issue of his criminal responsibility, the judge did not err in excluding testimony of a psychiatrist who had examined the defendant on the day after the crimes with respect to the defendant's competency to stand trial, where the defendant's competency was not an issue in the case. [734]

At a murder trial the judge properly excluded testimony of two psychiatric experts about the contents of certain mental health facility records concerning the defendant, where there was no showing that those specific records were admissible. [734-735]

At a murder trial the judge's charge to the jury on criminal responsibility did not mislead the jury on the burden of proof or on the proper standard for determining criminal responsibility, viewing the instructions as a whole. [735-736]

At a murder trial there was no substantial likelihood of a miscarriage of justice created by the judge's instruction to the jury on the issue of extreme atrocity or cruelty, where the evidence fully warranted the jury's verdict on that basis. [736]

INDICTMENTS found and returned in the Superior Court Department on September 2, 1987.

The cases were tried before *John P. Forte,* J., sitting under statutory authority, and a motion for a new trial was heard by him.

*Stanley W. Norkunas* for the defendant.

*Barbara F. Berenson,* Assistant District Attorney, for the Commonwealth.

WILKINS, J. On the night of July 2, 1987, the defendant stabbed his neighbor Mary Jane Pasciuti to death and inflicted serious stab wounds on his wife, Sandra. There was no ready explanation for Goudreau's behavior, and understandably he asserted a claim of lack of criminal responsibility when he was tried for the murder of Pasciuti and the attempted murder of his wife.

The defendant appeals from his convictions of murder in the first degree and of armed assault with intent to murder and from the denial of his motion for a new trial. He challenges (1) the propriety of a procedure by which the jury, after their deliberations had started, were shown a videotape that had been shown to them earlier and (2) the exclusion of certain medical evidence that the defendant offered in support of his claim of lack of criminal responsibility. We also consider two issues that the defendant does not argue but which require our attention pursuant to our duty under G. L. c. 278, § 33E (1994 ed.). There was no error warranting reversal of the defendant's convictions, and we see no basis for granting relief under G. L. c. 278, § 33E.

Because the issues argued on appeal do not require a recitation of the circumstances of the crimes, we present only a brief outline of what happened on July 2, 1987, on River Street in Westford, where the Goudreaus and the Pasciutis were neighbors and good friends. The defendant went to work that day, came home, showered, and watched television in the living room. His wife Sandra was watching a different television program in her bedroom. Suddenly the defendant came into the bedroom and started hitting Sandra. She got away from the defendant and fled to the Pasciuti home next door. Mary Jane Pasciuti and Sandra returned to the Goudreau home to get Sandra's daughter and her niece out of the house. With the children, they ran toward the Pasciuti home. The defendant came out of his house, ran past his wife and the children, and entered the Pasciutis' kitchen. He lunged for a counter that had on it a wooden block that held knives. In doing so, he knocked over a table and Pasciuti. He returned to his wife who was outside the front door and stabbed her three times. He then reentered the house and fatally stabbed

Pasciuti, inflicting numerous wounds. After a stand-off with the police at his home, Goudreau was arrested and booked in a procedure that was videotaped.

1. The videotape of the booking procedure at the Westford police station was admitted in evidence and played to the jury without objection, except that, at the request of defense counsel, the sound was turned off at the point at which the defendant was asked if he had been previously arrested and he answered affirmatively.

After the jury had deliberated briefly, they requested that they view the videotape again. The judge explained that the videotape could not be shown unless the part not to be heard was turned off. Counsel agreed that the videotape should be shown to the deliberating jurors (there were four alternates) in the courtroom with only counsel present and that the assistant district attorney would turn the sound off during the portion concerning his previous arrest. The judge cleared the courtroom of everyone else because, he said, ordinarily the showing would take place in the jury deliberation room. The jury saw the videotape again in the circumstances that the judge directed. At no time was the defendant personally asked to consent to the procedure adopted for the second showing of the videotape to the jury.

The defendant filed a motion for a new trial, asserting that his right to a fair trial had been violated when the prosecutor and defense counsel were permitted to sit with the deliberating jurors while the videotape was replayed. The judge denied the new trial motion on the theory that the defendant waived any objection to the procedure. The problem could have been avoided, of course, by the early preparation of a sanitized version of the videotape. There is doubt whether the jury were in any sense deliberating during the showing of the videotape. Without deciding the point, we shall assume that the jury were deliberating when the videotape was shown the second time. Because defense counsel was present throughout the showing and assented to the process and because the defendant has made no demonstration of prejudice to him, there was no violation of the defendant's rights warranting a new trial.

In the circumstances, there is no occasion to rule that the presence of the prosecutor and defense counsel was presumptively prejudicial. When an alternate juror sits with a

deliberating jury, there is no way for a defendant to determine whether there was inappropriate interference with the jury's deliberations, and we have thus presumed prejudice. See *Commonwealth* v. *Sheehy*, 412 Mass. 235, 238-239 (1992); *Commonwealth* v. *Jones*, 405 Mass. 661, 662 (1989); *Commonwealth* v. *Smith*, 403 Mass. 489, 496-497 (1988). The opportunity through defense counsel to identify any prejudice in the circumstances of this case, however, makes presumptive prejudice unnecessary and unwarranted. In the absence of any showing of prejudice, a new trial is not required.

2. The judge did not err in his rulings concerning the admissibility of medical evidence.

(a) The defendant objects to the exclusion of a dictated but unsigned opinion letter of a doctor at Bridgewater State Hospital summarizing the defendant's background and giving an opinion of the defendant's mental condition in July, 1988. Defense counsel described the letter as being "[o]ut of the Bridgewater records." Portions of the letter were beyond the range of information appearing in hospital records that is admissible pursuant to the hearsay exception stated in G. L. c. 233, § 79 (1994 ed.). This is so because the content of the unsigned letter was not limited to "those portions of records relating to treatment and medical history which possess the characteristics justifying the presumption of reliability." *Bouchie* v. *Murray*, 376 Mass. 524, 528 (1978). See *Diaz* v. *Eli Lilly & Co.*, 14 Mass. App. Ct. 448, 452-453 (1982). In the absence of the availability of some other hearsay exception, the opinion letter was inadmissible. *Commonwealth* v. *Roman*, 414 Mass. 235, 238-239 (1993). The judge did not err in excluding the dictated but unsigned letter.

(b) Another psychiatrist, who had examined the defendant on the day after the crimes to determine his competency to stand trial, testified as a defense witness. The defendant's competency to stand trial was not an issue in the case, and the judge did not abuse his discretion in excluding testimony as to what the witness concluded on that day with respect to the defendant's competency to stand trial. See *Commonwealth* v. *DeWolfe*, 389 Mass. 120, 123 (1983). The question of a defendant's competency to stand trial could confuse a jury in passing on the issue of a defendant's criminal responsibility. *Id.*

(c) The defendant complains that the judge excluded

testimony from two of his expert witnesses about the contents of specific records of the Solomon Mental Health Center concerning the defendant. There was no error. It was not shown that the specific records were admissible. These two experts, without objection, used Solomon Mental Health Center records in reaching their opinions, even though an expert may base an opinion on data not in evidence only if the data are admissible. See *Commonwealth* v. *Roman, supra* at 238; *Department of Youth Servs.* v. *A Juvenile,* 398 Mass. 516, 531-532 (1986).

3. An issue that is not raised in the defendant's brief, but which we consider pursuant to our duty under G. L. c. 278, § 33E, concerns the judge's charge on the issue of criminal responsibility.

Although the judge properly instructed the jury that the Commonwealth had the burden to prove criminal responsibility beyond a reasonable doubt, at various times he misstated the law concerning criminal responsibility. Three times he told the jury that, if the defendant was not free from a mental disease or defect, the Commonwealth had to prove that he had the substantial capacity to appreciate the wrongfulness of his conduct *or* that he had the substantial capacity to conform his conduct to the requirements of the law. In such a situation, however, the Commonwealth's burden is to prove both the defendant's substantial capacity to appreciate the wrongfulness of his conduct *and* his substantial capacity to conform his conduct to the requirements of the law. *Commonwealth* v. *McHoul,* 352 Mass. 544, 546-547 (1967).

The judge also used "finding" language that implied that the Commonwealth did not have to prove beyond a reasonable doubt that the defendant did not have a mental disease or defect. For example, he told the jury that "if you should find . . . he did have a mental disease or a mental defect," then they should consider the two aspects of the *McHoul* rule. Language of this type is unfortunate because it appears to undercut the Commonwealth's burden to prove the absence of a mental disease or defect beyond a reasonable doubt. See *Commonwealth* v. *Adorno,* 407 Mass. 428, 430 (1990).

Just as in the *Adorno* case, however, viewing the instructions as a whole, we conclude that the jury were not misled on the burden of proof. *Id.* Nor were the jury misled concerning the proper standard for determining criminal responsibil-

ity. The judge gave a correct supplemental instruction at the defendant's request and later gave a correct instruction on the subject, prefaced by the statement: "there may have been some confusion in my charge." See the appendix for a proper instruction on criminal responsibility.

4. The judge's charge on extreme atrocity or cruelty presents substantially the same problem that we discussed in *Commonwealth* v. *Semedo, ante* 716 (1996). The judge told the jury that they were not bound to consider any particular evidence in determining whether the defendant killed the victim with extreme atrocity or cruelty. The defendant does not argue here that the judge's charge on extreme atrocity or cruelty was wrong. We, therefore, consider the question only pursuant to our duty under G. L. c. 278, § 33E.

The trial in this case, as in the *Semedo* case, preceded this court's opinion in *Commonwealth* v. *Hunter,* 416 Mass. 831, 837 (1994). In the *Hunter* opinion, for the first time, the court stated that a jury could find a defendant guilty of murder in the first degree by reason of extreme atrocity or cruelty only if they based their verdict on at least one of the evidentiary considerations set forth in *Commonwealth* v. *Cunneen,* 389 Mass. 216, 227 (1983). The *Hunter* rule is not retroactive. *Commonwealth* v. *Semedo, supra* at 726.

There is no substantial likelihood of a miscarriage of justice here where the defendant stabbed Pasciuti numerous times while she was alive, fully warranting the jury's verdict on extreme atrocity or cruelty and our conclusion that the verdict unquestionably was based on more than one of the relevant evidentiary considerations stated in our *Cunneen* opinion.

*Judgments affirmed.*

*Denial of the motion for new trial affirmed.*

### APPENDIX.

The jury instruction in *Commonwealth* v. *Shanahan, ante* 631 (1996), provides an appropriate instruction on criminal responsibility. We set it forth with a few changes, and with indications of where obviously the charge should be adapted to the circumstances of the particular case:

The fundamental question that you must first resolve is whether the defendant did in fact commit a crime. The issue of [his or her] sanity does not come into play at all until after the Commonwealth has proved beyond a reasonable doubt that this defendant did commit [one or more of the crimes charged, or the crime charged].

On these indictments, even if the Commonwealth has proved beyond a reasonable doubt that the defendant committed a crime or crimes, once the issue of criminal responsibility is raised, then, again, the Commonwealth has an additional burden. The Commonwealth must prove, not only that the defendant committed the crime or crimes, but also must prove that [he or she] was criminally responsible on [the date of the crime], and that proof must go to a point beyond a reasonable doubt.

So the burden is on the Commonwealth to prove criminal responsibility beyond a reasonable doubt. The burden is not on the defendant to prove lack of criminal responsibility. The burden of proof never shifts to the defendant. Under the law, the Commonwealth bears the burden of proving beyond a reasonable doubt that this defendant committed the crimes with which [he or she] is charged, and also that the defendant is criminally responsible for [his or her] conduct.

Criminal responsibility is a legal term. A person is not criminally responsible for [his or her] conduct if [he or she] suffers from a mental disease or defect, and as a result of that mental disease or defect [he or she] lacks substantial capacity either to appreciate the criminality or wrongfulness of [his or her] conduct, or to conform [his or her] conduct to the requirements of law.

Now to go back over that definition of insanity, or, in other words, lack of criminal responsibility. And I intend to discuss with you almost every one of those terms. The phrase "a person is not criminally responsible for [his or her] conduct" applies only if the Commonwealth has proved beyond a reasonable doubt that the defendant committed [a crime or crimes] charged.

The phrase "mental disease or defect" does not include an abnormality manifested only by repeated criminal or otherwise antisocial conduct. If the Commonwealth persuades you beyond a reasonable doubt that the defendant was not suffering from a mental disease or defect at the time of the conduct in question on [the date of the crime], then it has satisfied its burden of proving that the defendant was legally sane, or, in other words, criminally responsible, and you need go no further.

If, however, the Commonwealth has not persuaded you beyond a reasonable doubt that the defendant was not suffering from a mental disease or defect, then, in order to sustain its burden of proof on criminal responsibility, the Commonwealth must prove beyond a reasonable doubt that, despite any mental disease or defect from which [he or she] may have been suffering, the defendant possessed substantial capacity, both to appreciate the

criminality or wrongfulness of [his or her] conduct and to conform [his or her] conduct to the requirements of law.

Now, as to the words "substantial capacity." Whether a defendant is to be called sane or insane cannot depend on any certain measurement. By employing the words "substantial capacity" to either appreciate the wrongfulness of [his or her] conduct or to conform [his or her] conduct to the requirements of the law, the test emphasizes that any incapacity is not sufficient, but that total incapacity is also unnecessary.

The word "appreciate" means to understand, rather than to merely know. In order to establish that the defendant had substantial capacity to appreciate the criminality or wrongfulness of [his or her] conduct, it is not enough to show that [he or she] merely had knowledge or an intellectual awareness that [his or her] conduct was wrong; rather, the Commonwealth must prove beyond a reasonable doubt that a mental disease or defect did not deprive the defendant of a meaningful understanding and intelligent comprehension of the legal and moral import of [his or her] conduct.

"Criminality" means the legal import of conduct, and "wrongfulness" means the moral import. In other words, the defendant must have been able to realize, in some meaningful way, that [his or her] conduct was illegal or wrong. For example, a very young child may know that her grandmother died because she was told about it, but she may not be able to appreciate or understand the meaning of death.

In order to establish that the defendant had substantial capacity to conform [his or her] conduct to the requirements of law, the Commonwealth must prove beyond a reasonable doubt that any mental disease or defect that may have existed did not deprive [him or her] of the ability to make [himself or herself] behave as the law requires; that is, [he or she] must have been able to exercise a free and rational will to choose to obey the law.

Because the Commonwealth must prove both that the defendant possessed substantial capacity to appreciate the criminality or wrongfulness of [his or her] conduct, and also that the defendant possessed substantial capacity to conform [his or her] conduct to the requirements of law, you must return a verdict of not guilty by reason of insanity if you have a reasonable doubt as to either aspect of this test.

I'll repeat that again. Because the Commonwealth must prove both that the defendant possessed substantial capacity to appreciate the criminality or wrongfulness of [his or her] conduct, and that the defendant possessed substantial capacity to conform [his or her] conduct to the requirements of law, you must return a verdict of not guilty by reason of insanity, if you have a reasonable doubt as to either aspect of this test.

Thus, even if the defendant were to be found beyond a reasonable doubt to have substantial capacity to appreciate the wrongfulness or criminality of [his or her] conduct, if there is a reasonable doubt whether [he or she] had a substantial capacity to conform [his or her] conduct to the requirements of law, [he or she] is legally insane.

On the other hand, even if the defendant were to be found beyond a reasonable doubt to have substantial capacity to conform [his or her] conduct to the requirements of law, if there is a reasonable doubt whether [he or

she] had substantial capacity to appreciate the wrongfulness or criminality of [his or her] conduct, [he or she] is legally insane.

It is the Commonwealth's burden to prove, beyond a reasonable doubt, that at the time of this alleged conduct the defendant did not suffer from a mental disease or defect, or, if such a reasonable doubt exists, the Commonwealth must prove beyond a reasonable doubt that the defendant still had the substantial capacity to appreciate the criminality or wrongfulness of [his or her] conduct, and that [he or she] had the substantial capacity to conform [his or her] conduct to the requirements of law.

In considering whether the Commonwealth has met its burden of proof, you should carefully weigh any specific evidence of sanity or insanity which has been presented at this trial. You obviously may consider [the opinions of any psychiatrists who testified, as well as] all the [other] evidence.

Once again I remind you that it is not up to the defendant to prove that [he or she] was insane at the time of the crimes. Rather, the burden of proof is on the Commonwealth to prove beyond a reasonable doubt the defendant was sane, that is, criminally responsible, at the time of the crimes.

Finally, I direct your attention to the fact that if the Commonwealth has proved all of the elements of an indictment against the defendant beyond a reasonable doubt, except [his or her] criminal responsibility, then the defendant is not entitled to a verdict of not guilty, but rather is entitled to a verdict of not guilty by reason of insanity.