NOTICE:  All slip opinions and orders are subject to formal revision and are superseded by the advance sheets and bound volumes of the Official Reports.  If you find a typographical error or other formal error, please notify the Reporter of Decisions, Supreme Judicial Court, John Adams Courthouse, 1 Pemberton Square, Suite 2500, Boston, MA, 02108-1750; (617) 557-1030; SJCReporter@sjc.state.ma.us

SJC-13544

COMMONWEALTH  vs.  ZACHAIRAH Z., a juvenile.

Essex.     April 1, 2024. – August 2, 2024.

Present:  Budd, C.J., Gaziano, Kafker, Wendlandt, Georges, & Dewar, JJ.

Criminal Responsibility.  Due Process of Law, Probation revocation, Mental health.  Practice, Criminal, Affirmative defense, Revocation of probation.  Mental Health.  Youthful Offender Act.

Indictment found and returned in the Essex County Division of the Juvenile Court Department on February 5, 2019.

A proceeding for revocation of probation was heard by Kerry A. Ahern, J.

The Supreme Judicial Court granted an application for direct appellate review.

Joseph N. Schneiderman (Andrew H. daMota, Committee for Public Counsel Services, & Brian J. Anderson also present) for the juvenile.
Kristen W. Jiang, Assistant District Attorney, for the Commonwealth.
Cristina F. Freitas & Debbie F. Freitas, for youth advocacy division of the Committee for Public Counsel Services & others, amici curiae, submitted a brief.

DEWAR, J. In this appeal, we are asked to decide whether the affirmative defense of lack of criminal responsibility is available in probation violation hearings. The juvenile was alleged to have violated a condition of his probation requiring him to obey State laws. He argued below that he lacked criminal responsibility at the time of the alleged violation due to the onset of his later-diagnosed schizophrenia, and that he therefore could not be found in violation of his probation. The judge concluded that a probationer is not entitled to raise lack of criminal responsibility as an affirmative defense to an alleged probation violation. She subsequently found the juvenile in violation, revoked his probation, and imposed a sentence of incarceration. On appeal, the juvenile seeks reversal on the ground that due process requires that probationers be permitted to raise lack of criminal responsibility as an affirmative defense to a probation violation.

We decline to import the affirmative defense of lack of criminal responsibility into probation violation hearings, because the principal inquiry at such a hearing -- whether the probationer has violated a condition of probation -- is not a question of criminal responsibility. This is not to say, however, that evidence of mental illness is irrelevant at a probation violation hearing. Due process precludes finding a

violation of probation conditions based on conduct beyond a probationer's control, and evidence regarding a probationer's mental illness may in some cases bear on the question whether the probationer's conduct was willful. Moreover, if a violation is found, a probationer may present evidence relating to mental illness in arguing for a particular disposition, and the judge should consider that evidence.

Here, consistent with an expert's evaluation of the juvenile, the juvenile's proffered defense of lack of criminal responsibility focused on an argument that he lacked the ability to appreciate the criminality or wrongfulness of his conduct and did not include an argument that he lacked the ability to control his conduct. The judge did not err in finding a willful violation in these circumstances. Nor did she abuse her discretion in revoking his probation and imposing a sentence of incarceration after having duly considered the evidence regarding the juvenile's mental illness in determining the disposition. We therefore affirm.[1]

1. Background. a. The juvenile's underlying adjudication as a youthful offender. In February 2019, the juvenile tendered

---

[1] We acknowledge the amicus brief submitted by the youth advocacy division of the Committee for Public Counsel Services, Massachusetts Association of Criminal Defense Lawyers, Citizens for Juvenile Justice, Mental Health Legal Advisors Committee, and retired Juvenile Court Judge Jay D. Blitzman.

a plea and was adjudicated as a youthful offender for breaking and entering a vehicle in the daytime with intent to commit a felony, in violation of G. L. c. 266, § 18.  He was subsequently placed on probation until his twenty-first birthday.  The conditions of the juvenile's probation required him to "[o]bey all court orders and all local, [S]tate and [F]ederal laws."

b.  <u>Events leading to the alleged probation violation</u>.  The facts concerning the juvenile's alleged probation violation are not disputed before this court.  In January 2022, when the juvenile was nineteen years old and still on probation, he began having hallucinations and delusions.  His mother and his Department of Youth Services caseworker observed that he was not making sense or acting like himself.  He went several days without sleeping and missed work.  The juvenile became increasingly paranoid about his and his family's safety, believing that he was being targeted and that his daughter was being harmed.  In order to protect himself from the perceived threats, he obtained a firearm through connections he had from prior gang involvement.

On January 21, 2022, the juvenile's mother called the police to report that the juvenile was hallucinating and becoming violent.  When officers responded, the juvenile was in a physical altercation with his landlord.  A struggle between the juvenile and the police officers ensued, but the juvenile

was eventually restrained.  The juvenile was transported to a hospital for a mental health evaluation.  While the juvenile was in the emergency room, a hospital security officer found, in the pocket of the juvenile's shorts, a loaded semiautomatic pistol with one bullet chambered.  Police officers later ascertained that the juvenile did not have a firearms license.  The juvenile was then discharged from the hospital and transported to the police station.  A criminal complaint issued from the District Court charging him with unlawful possession of a loaded firearm, in violation of G. L. c. 269, § 10 (n), and unlawful possession of a firearm without a license, in violation of G. L. c. 269, § 10 (a).  A notice of a probation violation was filed that same day, alleging that the juvenile had violated the conditions of his probation because he had "violated a criminal law."

c.  The District Court case.  In the District Court case, the juvenile was detained without bail on a finding of dangerousness under G. L. c. 276, § 58A.  A judge subsequently ordered that the juvenile be hospitalized for competency and criminal responsibility evaluations under G. L. c. 123, § 15 (a), and his hospitalization was repeatedly extended under G. L. c. 123, § 15 (b).

In June 2022, a forensic psychologist opined that the juvenile was not competent to stand trial as he "continue[d] to present as acutely mentally ill."  The psychologist believed

that the juvenile's symptoms of psychosis were consistent with schizophrenia. She further believed that he needed additional hospitalization to stabilize his mental illness and to "mitigate his risk of harm towards others." The juvenile was then civilly committed under G. L. c. 123, § 16 (b).

The juvenile received treatment at a State hospital, including antipsychotic medication, for several months. His symptoms gradually improved. In November 2022, he was deemed competent and discharged from the hospital.

In December 2022, the juvenile submitted to a criminal responsibility evaluation by a forensic psychologist, Ryan Brimigion, in connection with the pending firearms charges in the District Court. The juvenile recounted to Brimigion the events leading up to the firearm charges, including the onset of his psychotic symptoms. The juvenile told Brimigion that, at the time, he "thought the safest thing to do was get a gun." He admitted that he knew it was illegal for him to possess a firearm but stated he "wasn't thinking that at the time." Brimigion diagnosed the juvenile with schizophrenia, noting that it is "a substantial disorder of thought and perception, which grossly impairs his judgment, behavior, and capacity to recognize reality." Brimigion believed that the juvenile's schizophrenia rendered him unable to appreciate the wrongfulness of obtaining a firearm. Brimigion did not believe, however,

that the juvenile's schizophrenia had impaired his ability to conform his conduct to the requirements of the law.

Based on Brimigion's evaluation, the juvenile is pursuing a defense of lack of criminal responsibility in the District Court case.

d.  The probation violation proceedings.  In February 2023, a Juvenile Court judge held a hearing on the juvenile's alleged violation of his probation conditions based on the same conduct that led to the January 2022 firearm charges.  The juvenile sought to raise lack of criminal responsibility as an affirmative defense to the probation violation.  He further argued that, even if the affirmative defense were not available, his probation should not be revoked because his mental health would be better served by remaining in the community, where he could receive services not available to him in jail.  And he argued that, with treatment, he would not be a threat to the community.

The Juvenile Court judge held that lack of criminal responsibility is not an affirmative defense to an alleged probation violation, but stated that she would take into account the evidence regarding the juvenile's mental illness with respect to the disposition.  The judge found, by a preponderance of the evidence, that the juvenile violated the conditions of his probation by possessing a loaded firearm.  Regarding the

disposition, the judge again acknowledged the evidence relating to the onset of the juvenile's schizophrenia. She also noted the juvenile's lengthy record of delinquency proceedings for assault and battery, intimidation, harassment, and a firearm offense; his prior gang involvement; and the evident ease with which he remained able to obtain a firearm. Concluding that she had "grave concerns" about the juvenile's "ability to maintain compliance with the law outside in the community," she revoked the juvenile's probation. She sentenced him to two years in a house of correction, with 665 days of credit for time served, on the underlying offense for which he had been adjudicated a youthful offender.

The juvenile timely appealed, and we allowed his application for direct appellate review.

2. Discussion. a. Standard of review. Following a revocation of probation, as following a criminal trial, "we review preserved constitutional claims to determine whether the error, if any, was harmless beyond a reasonable doubt" (quotation and citation omitted). Commonwealth v. Kelsey, 464 Mass. 315, 319 (2013). Absent constitutional error, we must determine whether sufficient reliable evidence in the record supports the judge's finding by a preponderance of the evidence that the probationer violated the specified condition of probation. Commonwealth v. Jarrett, 491 Mass. 437, 440 (2023).

We review the judge's decision to revoke probation for an abuse of discretion.  Id.

b.  Criminal responsibility and mental illness in probation violation proceedings.  In a criminal trial, the affirmative defense of lack of criminal responsibility "remove[s] from the pale of criminal sanctions precisely those who are in no meaningful sense responsible for their actions" (citation omitted).  Commonwealth v. McHoul, 352 Mass. 544, 552 (1967).  A defendant is not criminally responsible where the defendant, due to a "mental disease or defect[,] . . . lacks substantial capacity either to appreciate the criminality (wrongfulness) of his conduct or to conform his conduct to the requirements of law" (citation omitted).  Id. at 546-547.  Once the defense has been raised, the Commonwealth must prove beyond a reasonable doubt that the defendant was in fact criminally responsible.  Commonwealth v. Berry, 457 Mass. 602, 612 (2010), S.C., 466 Mass. 763 (2014).  If the Commonwealth fails to meet its burden, the defendant cannot be criminally punished for the conduct.  See McHoul, supra at 552.

We have never recognized an affirmative defense of lack of criminal responsibility in probation violation hearings, which "are not part of a criminal prosecution."  Commonwealth v. Durling, 407 Mass. 108, 112 (1990).  Probation is "a legal disposition which allows a criminal offender to remain in the

community subject to certain conditions and under the supervision of the court." Id. at 111. A judge's factual finding that a probationer has failed to comply with a probation condition -- even a probation condition requiring compliance with criminal laws -- does not amount to a finding of criminal responsibility for the conduct that formed the violation. See id. at 112. And if, after finding a probation violation, a judge chooses to revoke probation and impose a sentence, that sentence is not a criminal punishment for the probation violation itself; the probationer is instead being "sentenced anew on his [or her] underlying conviction" (citation omitted). Commonwealth v. Eldred, 480 Mass. 90, 97 (2018).

Despite the fact that criminal responsibility is thus not directly at issue in a probation violation hearing, the juvenile claims that probationers' rights to due process under the Fourteenth Amendment to the United States Constitution and art. 12 of the Massachusetts Declaration of Rights require importing the affirmative defense of lack of criminal responsibility into probation violation hearings. Drawing on a line of cases holding that due process precludes finding a probation violation or revoking probation based on circumstances beyond a probationer's control, the juvenile equates such a lack of willfulness with a lack of criminal responsibility. He argues that due process therefore likewise precludes finding a

violation or revoking probation and imposing a sentence of incarceration where, once the issue has been adequately raised, the Commonwealth has failed to establish that a mentally ill probationer is criminally responsible for the conduct forming the violation.

We consider this claim under our familiar standard for determining the process due in a probation violation hearing, which need not include "the full panoply of constitutional protections applicable at a criminal trial."  Durling, 407 Mass. at 112.  "[W]hile probationers have fewer and 'more flexible' due process rights at a probation violation hearing than do defendants at a criminal trial, those constitutional rights probationers do possess are protected with 'equal vigilance.'"  Jarrett, 491 Mass. at 442, quoting Kelsey, 464 Mass. at 319.  "To say that the concept of due process is flexible" is simply "a recognition that not all situations calling for procedural safeguards call for the same kind of procedure."  Morrissey v. Brewer, 408 U.S. 471, 481 (1972).  To determine whether a particular procedural protection is constitutionally required in a probation violation proceeding, we assess "the definition and weight of the competing interests involved."  Durling, supra at 113.

A probation violation hearing's purpose is to determine whether the probationer violated the conditions of probation.

See Durling, 407 Mass. at 116.  "If a defendant violates one or more conditions of probation, a judge may revoke his probation and sentence him to a term of imprisonment for his underlying conviction, or return the defendant to probation, with new or revised conditions."  Commonwealth v. Goodwin, 458 Mass. 11, 15 (2010).  Ultimately, such hearings ensure that a sentence of probation serves probation's two primary goals:  "rehabilitation of the defendant and protection of the public from the defendant's potential recidivism."  Eldred, 480 Mass. at 95.

A probationer "has a liberty interest at stake" in a probation violation hearing.  Durling, 407 Mass. at 115.  This liberty interest is "conditional"; "[i]t was given to [the probationer] as a matter of grace when the State had the right to imprison him," and "[i]f the probationer has violated the conditions imposed upon him, his liberty can be taken away."  Id.  However, "having been afforded the opportunity to demonstrate rehabilitation and to reintegrate into society, a probationer obtains an interest in avoiding the arbitrary deprivation of that opportunity."  Commonwealth v. Costa, 490 Mass. 118, 123 (2022).  See Gagnon v. Scarpelli, 411 U.S. 778, 781-782 (1973).  The probationer thus has "an interest in a reliable, accurate evaluation of whether the probationer indeed violated the conditions of his probation."  Durling, supra at 116.

The Commonwealth shares this interest in a reliable and accurate determination of whether conditions of probation have been violated. "Both society and the probationer benefit when the probationer is rehabilitated," and "[s]ociety only benefits from a revocation when there is an accurate and reliable ground upon which that revocation is based." Durling, 407 Mass. at 116. In addition, the Commonwealth has an interest in "expeditiously dealing with" the "threat to the public welfare" posed by a probationer "who is not complying with [probation] conditions," including an interest "in imposing effective punishment . . . when rehabilitation is not possible." Id. at 115-116. The Commonwealth also has a "strong interest in being able to revoke probation in appropriate cases without having to repeat its effort" in proving its case on the underlying offense for which probation was originally imposed. Id. at 116. And, in light of "the crowded dockets and the limited resources of the trial courts" as well as the heavy burden posed by "requiring extensive, fact-intensive hearings," the Commonwealth has an interest in "maintaining administrative efficiency and reducing costs." Id.

Both the United States Supreme Court and our court have long recognized certain "minimum requirements" of due process at a probation violation hearing, including notice and the opportunity to be heard. See Durling, 407 Mass. at 113, and

cases cited. The hearing itself comprises "two distinct phases: (1) the adjudicatory phase, and (2) the dispositional phase." Eldred, 480 Mass. at 101. In the first phase, "the judge must 'determine, as a factual matter, whether the defendant has violated the conditions of his [or her] probation'" by a preponderance of the evidence. Id., quoting Commonwealth v. Pena, 462 Mass. 183, 187 (2012). We have held that "[a] defendant can be found in violation of a probationary condition only where the violation was wilful." Eldred, supra, quoting Commonwealth v. Henry, 475 Mass. 117, 121-122 (2016). Cf. Bearden v. Georgia, 461 U.S. 660, 668 (1983) ("it is fundamentally unfair to revoke probation automatically" where "probationer has made all reasonable efforts" to obey conditions of probation). In the second phase, a judge has discretion to determine the appropriate disposition for a probationer found in violation: whether to revoke probation, reprobate the probationer on the same conditions, or modify the conditions of probation.[2] Eldred, supra at 102. The probationer is "entitled"

---

[2] The judge "shall consider 'such factors as public safety; the circumstances of any crime for which the probationer was placed on probation; the nature of the probation violation; the occurrence of any previous violations; and the impact of the underlying crime on any person or community, as well as mitigating factors.'" Eldred, 480 Mass. at 103, quoting Rule 8(d) of the District/Municipal Court Rules for Probation Violation Proceedings. Accord Juvenile Court Standing Order 1-17(VIII)(d) (2017).

at this second stage "to show that there was a 'justifiable excuse for any violation or that revocation is not the appropriate disposition.'" Id. at 103, quoting Pena, supra at 188, quoting Black v. Romano, 471 U.S. 606, 612 (1985).

"The right to present a defense" during the adjudicatory phase of a probation violation hearing "is parallel to, but not coextensive with, the right to present a defense at trial." Kelsey, 464 Mass. at 322. Where a probationer claims a due process right to present a particular defense, we "consider whether a ruling in the probationer's favor will sufficiently advance the 'reliable, accurate evaluation of whether the probationer indeed violated the conditions of . . . probation,' [Durling, 407 Mass. at 116], so as to outweigh the Commonwealth's 'significant interests in informality, flexibility, and economy,' [Gagnon, 411 U.S. at 788]." Kelsey, supra. We have thus concluded, for example, that a probationer's "presumptive due process right to call witnesses in his or her defense . . . may be overcome by countervailing interests" depending on the circumstances of a case, such as where "the proposed testimony is unnecessary to a fair adjudication of the alleged violation or unduly burdensome to the witness or the resources of the court." Costa, 490 Mass. at 127, quoting Commonwealth v. Hartfield, 474 Mass. 474, 481 (2016).

Considering all of the interests at stake, we disagree with the juvenile that due process requires permitting probationers to raise the same affirmative defense of lack of criminal responsibility that is available to defendants at criminal trials. Importing this affirmative defense into probation violation hearings would require the Commonwealth to prove -- whenever a question of criminal responsibility is raised by a probationer -- that, in committing the particular alleged violation of a probation condition, the probationer possessed both the ability to act in conformance with the law's requirements and the ability to appreciate the criminality or wrongfulness of the conduct. See McHoul, 352 Mass. at 546-547.

This lack of criminal responsibility defense would not directly advance the Commonwealth's and probationer's joint interest in an accurate determination of the question at issue in a probation violation hearing: "whether the probationer indeed violated the conditions of . . . probation." Durling, 407 Mass. at 116. At a criminal trial, the affirmative defense of lack of criminal responsibility does not dispute, as a factual matter, that the charged offense took place. Rather, the defense precludes imposing criminal liability and punishment on the defendant. See McHoul, 352 Mass. at 555 (defense recognizes "injustice of punishing" those lacking criminal responsibility for their "wrong conduct"). This affirmative

defense is thus different from defenses like self-defense or defense of property, which amount to "a claim that the probationer's conduct was, in fact, lawful" and therefore would not violate a probation condition requiring compliance with criminal laws. Commonwealth v. Ogarro, 95 Mass. App. Ct. 662, 665-667 & n.3 (2019) (concluding that "when a defendant adequately raises a claim of defense of property in the context of probation violation proceedings, due process requires that the Commonwealth disprove the defense by a preponderance of the evidence," and distinguishing criminal responsibility defense). Accordingly, where conduct forming a probation violation also results in a new criminal charge, the fact that a probationer may have a viable defense of lack of criminal responsibility to the criminal charge does not by itself preclude a finding that the probationer violated the probation condition.

Moreover, a probation revocation proceeding does not concern whether a probationer deserves criminal punishment for the conduct that violated the conditions of probation. As discussed, where a judge does find a probation violation and chooses to revoke probation, the sentence of incarceration imposed is a sentence for the conviction for which the probationer was on probation, not for the conduct forming the probation violation. Eldred, 480 Mass. at 97.

And, while a probationer cannot be found in violation of probation for conduct that was not willful, a lack of criminal responsibility under the standard set forth in McHoul, 352 Mass. at 546-547, does not necessarily negate the requirement of willfulness, which concerns whether the conduct was within the probationer's control.  The definition of "willfulness" in our jurisprudence depends on the context.  Millis Pub. Sch. v. M.P., 478 Mass. 767, 776 (2018).  With respect to probation violations, the requirement of willfulness is not the same as a mens rea under a criminal law, see, e.g., Commonwealth v. Adams, 482 Mass. 514, 526-527 (2019), but instead originated from the recognition that, as a matter of fundamental fairness, due process precludes revoking probation where the basis for the probation violation was beyond the probationer's control, see Commonwealth v. Canadyan, 458 Mass. 574, 578-579 (2010), citing Bearden, 461 U.S. at 669 n.10.

A probation violation is not willful, for example, if a probationer "cannot reasonably afford to pay" ordered restitution, Henry, 475 Mass. at 122, or is homeless and without access to an electrical outlet or telephone line necessary for compliance with a condition to wear a global positioning system monitor, Canadyan, 458 Mass. at 578-579.  In circumstances more analogous to the case here, the probationer in Eldred, 480 Mass. at 104, urged this court to hold that, where a probationer has a

substance use disorder, the probationer's violation of a condition to avoid drug use is not willful. Although not reaching the question on the record presented, we framed the question for future cases as whether a "violation was not wilful because [substance use disorder] affects the brain in such a way that certain individuals cannot control their drug use" (emphasis added). Id.

Criminal responsibility is not congruent with willfulness in the sense pertinent at probation violation proceedings because criminal responsibility involves a broader question about a defendant's understanding of the wrongfulness or criminality of his or her conduct. See McHoul, 355 Mass. at 555. Indeed, here, the expert who evaluated the juvenile for criminal responsibility in his District Court case opined that, although the juvenile's ability to appreciate the wrongfulness of his conduct was impaired, his ability to conform his conduct to the requirements of the law remained intact. Accordingly, where a defendant cannot appreciate the criminality or wrongfulness of his conduct, a defendant may prevail on an affirmative defense of lack of criminal responsibility even if the defendant acted willfully.[3]

---

[3] We note, moreover, that it is not clear that conduct violating a probation condition -- such as a failure to attend a meeting with a probation officer -- always could or should be

While thus not directly advancing the interest in an accurate and reliable determination of whether a willful violation of a probation condition occurred, importing the affirmative defense of lack of criminal responsibility into probation violation hearings would infringe on the Commonwealth's interests in mitigating potential threats to public safety and resolving probation violations efficiently. See Durling, 407 Mass. at 115-116. Because the defense requires that a defendant understand the criminality or wrongfulness of the conduct at issue, recognizing the defense would in some cases preclude finding a violation -- and deprive the judge of the concomitant opportunity to reconsider whether probation remained appropriate or whether additional conditions should be imposed -- no matter how clear the fact that a probationer had failed to comply with a condition of probation, and even where experts agreed that mental illness did not deprive the probationer of the volitional ability to comply. Moreover, requiring the Commonwealth to prove, in every case where a

---

appreciated to be criminal or wrongful within the meaning of the standard for lack of criminal responsibility. See Commonwealth v. Goudreau, 422 Mass. 731, 738 (1996) (model jury instruction on lack of criminal responsibility providing that "'[c]riminality' means the legal import of conduct" while "'wrongfulness' means the moral import"). While the juvenile here was alleged to have violated his probation by violating criminal laws, his argument in favor of recognizing this affirmative defense appears to sweep more broadly, urging us to recognize the defense to any probation violation.

probationer raised the defense, that the probationer could appreciate the criminality or wrongfulness of the conduct forming the basis of the alleged violation would entail an additional "extensive, fact-intensive" inquiry.  Id. at 116. The affirmative defense would thereby hinder the Commonwealth in "expeditiously dealing with" the "threat to the public welfare" posed by a probationer "who is not complying with [probation] conditions."  Id. at 115-116.

We therefore conclude that due process does not require recognizing the affirmative defense of lack of criminal responsibility in probation violation proceedings, and we decline to do so.  Importing the defense into such proceedings would not "sufficiently advance the reliable, accurate evaluation of whether the probationer indeed violated the conditions of his probation . . . so as to outweigh the Commonwealth's significant interests in informality, flexibility, and economy" (quotations and citations omitted). Kelsey, 464 Mass. at 322.

We note that our holding today is in accord with most other State and Federal courts that have considered the question.  See People v. Allegri, 109 Ill. 2d 309, 314-316 (1985), and cases cited.  See also W.R. LaFave & J.D. Ohlin, Criminal Law § 7.1(b), at 482 n.26 (7th ed. 2023) (LaFave).  While addressing differing probation statutes and not all expressly framing the

issue as a matter of due process, these cases similarly recognize that, unlike criminal trials, probation violation proceedings are "not designed to punish the violator."  LaFave, supra, quoting 2 N. Cohen, The Law of Probation and Parole § 22:24 (2d ed. 1999).  See, e.g., Knight v. Estelle, 501 F.2d 963, 964-965 (5th Cir. 1974), cert. denied, 421 U.S. 1000 (1975) ("the revocation authority . . . does not sit to punish"; "[i]ts concern is whether the law has been obeyed, not whether it has been culpably broken").  At most, the cases relied on by the juvenile and by his amici acknowledge that mental illness may in some circumstances bear on willfulness and also may be relevant in considering the appropriate disposition once a violation is found.  See, e.g., State v. Villiarimo, 132 Haw. 209, 220 (2014) (expert testimony about probationer's mental health would have been relevant to question of willfulness of violation); State v. Olson, 2003 ND 23, ¶ 16 (while insanity is not available defense to probation violations, insanity "may be a relevant mitigating factor in determining if probation should be revoked"); Sharp v. State, 2008 WY 142, ¶ 11 (probationer's mental illness could render violation of probation not willful).

We too recognize that evidence of mental illness is distinct from the affirmative defense of lack of criminal responsibility.  See generally McHoul, 352 Mass. at 546-547.  Our holding today does not preclude a probationer from

introducing evidence of mental illness at a probation violation hearing where relevant. As discussed, a probation violation must be willful, and there may be instances in which probationers, due to mental illness, "cannot control" their conduct. See Eldred, 480 Mass. at 104.

Evidence of mental illness is also highly relevant to a judge's determination on the disposition after finding a probation violation. "The rehabilitative goals of probation, coupled with the judge's dispositional flexibility at each stage of the process, enable and require judges to consider the unique circumstances facing each person they encounter -- including whether that person suffers from" mental illness. Eldred, 480 Mass. at 95. Moreover, mental illness may be relevant at the dispositional stage in considering whether there exists a mitigating factor to the violation itself. See Black, 471 U.S. at 612 (due process requires opportunity to show "a justifiable excuse for any violation or that revocation is not the appropriate disposition"). Indeed, in 2023, we issued revised standards to enhance our judiciary's response to the impact of mental health conditions as well as substance use and co-occurring disorders, providing that judges and court personnel should affirmatively "look for indications of . . . mental health conditions . . . that may be a factor related to a case before the court." Supreme Judicial Court, Standards on

Substance Use Disorders & Mental Health Conditions 15 (Oct. 10, 2023) (standards).  The standards urge judges to "consider ordering treatment, if appropriate and if authorized by law," tailored to "a party's treatment needs" and "selected based on clinical input identifying the type of evidence-based treatment that will work best for the party, with full consideration of public safety."  Id. at 19.  And the standards acknowledge the "key role" of the probation department in, among other things, arranging treatment placements and monitoring compliance with recommended treatment interventions for probationers with mental illness.  Id. at 14.

In sum, while we reject the juvenile's request that we newly recognize lack of criminal responsibility as an affirmative defense to an alleged probation violation, we underscore the relevance of evidence regarding mental illness in probation violation proceedings.

c.  The juvenile's case.  Having concluded that due process does not require permitting a probationer to defend against a probation violation on the ground of lack of criminal responsibility, we discern no error by the judge in preventing the juvenile from raising that defense.  And the record supported by a preponderance of the evidence the judge's finding that the juvenile violated the condition of his probation requiring him to "[o]bey all . . . [S]tate . . . laws"; the

juvenile did not contest that he possessed a loaded firearm without a license or that he acted willfully.

Nor did the judge abuse her discretion with respect to the disposition.  The record reflects that the judge carefully considered all of the evidence before her, including the evidence regarding the juvenile's mental illness.  In arguing against revocation, the juvenile cited his expert's opinion that he did not have an ability to appreciate the wrongfulness of his conduct at the time of the violation; however, as noted, the expert opined that the juvenile did not lack the ability to conform his conduct to the requirements of the law.  The judge balanced the evidence regarding the onset of the juvenile's schizophrenia against other considerations, including her "grave concerns" about the threat to public safety posed by the juvenile based on the past offenses in his lengthy delinquency record, the seriousness of the underlying offense, and the ease with which he obtained a firearm.  While the juvenile argues that Juvenile Court judges have a special obligation to consider alternatives to incarceration pursuant to that court's mission to rehabilitate juvenile offenders, see Commonwealth v. Samuel S., 476 Mass. 497, 506-507 (2017), and that his mental health would have better been served by treatment and supervision in the community, we cannot conclude that the judge abused her discretion in determining that revocation was proper in the

circumstances here.  Although revoking the probation of a person suffering from a mental illness may in some circumstances be an abuse of discretion, this is not such a case.[4]

3.  Conclusion.  We hold that due process does not require permitting a probationer to raise the affirmative defense of lack of criminal responsibility in probation violation proceedings.  Probationers nevertheless may present relevant evidence relating to mental illness in probation violation hearings.  Judges should consider such evidence at the adjudicatory phase if the evidence bears on whether a violation was willful, in the sense of having been within the probationer's control.  And, if the judge finds a violation occurred, the judge should consider evidence relating to mental illness in determining the appropriate disposition.

---

[4] To the extent it rises to the level of appellate argument, we also reject the juvenile's one-sentence assertion that revoking his probation and imposing a sentence of incarceration violated the prohibition on cruel or unusual punishment under art. 26 of the Massachusetts Declaration of Rights because it amounted to punishing him for his status as a person with schizophrenia.  The juvenile was not punished for being a person with schizophrenia, but instead for his adjudication as a youthful offender for the offense of breaking and entering.  And, as discussed, while his sentence of incarceration for that offense was imposed upon a probation violation that occurred when he was suffering from mental illness, the expert who evaluated the juvenile for purposes of criminal responsibility for that conduct opined that the juvenile's mental illness did not deprive him of the ability to conform his conduct to the requirements of the law.

Here, we affirm the order finding a probation violation, revoking probation, and imposing a sentence on the juvenile, because the judge did not err in declining to entertain the defense of lack of criminal responsibility; the record supported her determination that the juvenile violated a condition of his probation; and the judge did not abuse her discretion in revoking his probation and imposing a sentence of incarceration on the underlying offense.

So ordered.
